# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **ANDRE RODGERS**, <br><br> Plaintiff, <br><br> vs. <br><br> **COREY EISEL, WAYNE STATE UNIVERSITY POLICE OFFICER,** <br> **AND HEATHER GLOWACZ, WAYNE STATE UNIVERSITY POLICE OFFICER**, <br><br> Defendants. | 2:19-CV-11450-TGB <br><br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT IN LIEU OF AN ANSWER** |

This matter is before the Court on Defendants' "motion to dismiss and for summary judgment in lieu of an answer." ECF No. 5. For the reasons stated herein, the Court will **GRANT** Defendants' motion.

## I. Background

On May 20, 2016, around 7:30 pm, Plaintiff Andre Rodgers was driving near the intersection of MLK Boulevard and Woodward Avenue in Detroit, Michigan. Police Report, ECF No. 5-1. Wayne State University police officers Eisel and Glowacz ("Defendants") were on routine patrol. *Id*. After observing Plaintiff speeding and running a red light at the intersection of MLK and Trumbull, Defendants pulled Plaintiff over for

1

a traffic stop. *Id.* During the stop, Defendants smelled alcohol on Plaintiff's breath and observed him swaying after ordering him out of the car. *Id.* The officers tried many field sobriety tests, but Rodgers could not follow directions. *Id.* They eventually did a breathalyzer test (after some 20 minutes) and Plaintiff blew a BAC of .207. *Id.* The police report indicates that Plaintiff was handcuffed, arrested for operating his vehicle under the influence, and brought to the Detroit Detention Center without any use of force or other issues noted. *Id.* Plaintiff's complaint alleges that when he was handcuffed, Defendants "put the handcuffs on so tight as to *cut* Plaintiff's wrists." ECF No. 1, PageID.4 (emphasis added). He alleges that he "repeatedly" told Defendants that the handcuffs were too tight, and Defendants refused to loosen them. *Id.* He claims that due to Defendants' refusal to loosen the cuffs, he sustained "severe and permanent injuries to his wrists." *Id.*

Plaintiff initially brought suit against Eisel and Glowacz in March 2019, alleging one count of excessive force under 42 U.S.C. § 1983 for excessively tight handcuffing. That lawsuit was filed in the Eastern District of Michigan before this Court at 2:19-cv-10809-TGB-PTM (hereinafter "*Rodgers I*"). The Complaint in *Rodgers I* incorrectly alleged that Eisel and Glowacz were police officers with the City of Detroit. Plaintiff later learned that Eisel and Glowacz were not Detroit Police Officers but rather Wayne State University Police Officers, and filed the instant lawsuit appropriately identifying Eisel and Glowacz as such. For

reasons that are unclear, Plaintiff did not seek to amend his complaint in *Rodgers I*, but instead filed the instant lawsuit. The Court dismissed Plaintiff's complaint in *Rodgers I* without prejudice, indicating that Plaintiff could proceed to adjudicate his claims against Eisel and Glowacz in this lawsuit. *See* Case No. 2:19-cv-10809-TGB-PTM, ECF No. 11.[1]

Defendants now move, prior to discovery and in lieu of an answer, "to dismiss and for summary judgment." ECF No. 5. The matter is fully briefed. The Court scheduled oral argument for January 29, 2020, but Plaintiff's counsel failed to appear, so no argument took place.

## II. Standard of Review

The standard of review to be applied here is complicated by the fact that Defendants captioned their motion as one "to dismiss *and* for summary judgment," and both parties provide the standards of review under Rule 12(b)(6) and Rule 56. Although neither party invokes or argues the applicability of Rule 12(d), under that Rule a motion to dismiss is converted into a motion for summary judgment when matters outside of the pleadings are presented to, and considered by, the Court.

---

[1] Defendant filed the instant "motion to dismiss and for summary judgment in lieu of an answer" in June 2019, approximately one month *before* the Court dismissed the *Rodgers I* complaint without prejudice to permit Plaintiff to proceed in the instant case against Eisel and Glowacz. Because of the timing of these filings, one of Defendant's grounds for summary judgment is that Plaintiff's complaint is a duplicative lawsuit of *Rodgers I* and is a violation of the claim-splitting doctrine. ECF No. 5, PageID.24-25. In light of the Court's dismissal of the *Rodgers I* lawsuit, Defendants in their reply brief have abandoned their claim-splitting argument as moot. (ECF No. 11 at PageID.179). The Court agrees.

3

Plaintiff contends the Court should deny summary judgment because the motion was filed before discovery began and Plaintiff needs discovery to defend his claim against Defendants' allegations of qualified immunity. *See* ECF No. 10, PageID.120. But under Rule 56(b) a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery," including prior to discovery. *See Short v. Oaks Corr. Facility*, 129 Fed.Appx. 278, 283 (6th Cir. 2005); *see also Aldridge v. City of Warren*, 682 Fed.Appx. 461, 463 (6th Cir. 2017) ("[W]hile the defendants' motion sought both a Rule 12 dismissal and, in the alternative, a Rule 56 summary judgment, the presence of a Rule 12 alternative motion did not somehow eliminate the Rule 56 motion."). While the Court agrees Defendants' caption is slightly confusing, Rule 56(b) permits Defendants to file this motion as a motion for summary judgment.

Additionally, because both parties attached exhibits for the Court to consider and cited the standards for summary judgment motions in their briefs, under Rule 12(d), the Court would treat Defendants' motion as one for summary judgment either way. *See Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 932 (6th Cir. 2000) ("Because the parties both submitted numerous exhibits fully addressing the [] argument for dismissal, they had sufficient notice that the district court could consider this outside material when ruling on the issues presented in the [] motion

to dismiss and could convert it into a motion for summary judgment under Fed. R. Civ. P. 12(b).") (alterations added). Accordingly, the Court applies the summary judgment standard of review.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*,

886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

### III. Analysis
#### A. Defendants are entitled to sovereign immunity in their official capacities as employees of Wayne State University

Plaintiff's complaint seeks damages against Wayne State University police officers Eisel and Glowacz in their official capacities. *See* ECF No. 1. Defendants assert that Eisel and Glowacz are entitled to sovereign immunity because Wayne State University is an "arm of the state" for purposes of the Eleventh Amendment, and as employees of the university, are also entitled to sovereign immunity. ECF No. 5, PageID.26-27 (citing Mich. Const. art. VIII, § 5; M.C.L. § 390.1511). The Court agrees.

Under the Eleventh Amendment, the states have immunity from suit in federal courts. U.S. Const. amend. XI. The Supreme Court has held that the Eleventh Amendment applies to 42 U.S.C. § 1983 claims against states and state entities. *Quern v. Jordan*, 440 U.S. 332, 341-42

(1979). Therefore, a federal court award of § 1983 monetary relief against a state, state agency, or state official sued in an official capacity is barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The entity asserting Eleventh Amendment immunity bears the burden of showing that it is entitled to sovereign immunity by showing that it is an "arm of the state." *Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 963 (6th Cir. 2002).

Plaintiff relies on *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452-56 (1976) and *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 19-20 (1989) for the proposition that the Supreme Court has found authority to abrogate the states' immunity from suit under the Fourteenth Amendment and the Interstate Commerce Clause. ECF No. 10, PageID.118. But Plaintiff ignores that the Supreme Court has already expressly held that the Eleventh Amendment applies to § 1983 claims because, in enacting § 1983, Congress did not intend to abrogate the states' immunity. *See Quern*, 440 U.S. at 341-42.

The question, therefore, is only whether Wayne State University is an "arm of the state" such that its actors can seek protection from suit under the Eleventh Amendment. And here, the Sixth Circuit, and numerous district courts in the circuit have concluded that Wayne State University is an "arm of the state" entitled to Eleventh Amendment immunity. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775-76 (6th Cir. 2015) (citing *Coleman*, *Komanicky*, and others to acknowledge that

Wayne State University "is an arm of the state entitled to Eleventh Amendment immunity"); *Komanicky v. Teachers Ins. & Annuity Ass'n.*, 2000 WL 1290357, at *2 (6th Cir. Sept. 7, 2000) ("Wayne State University's Board of Governors . . . is clearly a state agency."); *Gwanjun Kim v. Grand Valley State Univ.*, 2012 WL 1033985, at *4 (W.D. Mich. Feb. 2, 2012) (holding that Grand Valley State University defendants were immune from suit under the Eleventh Amendment because Grand Valley, like Wayne State, is a state institution of higher education under Article 8, § 4 of the Michigan Constitution); *Tan v. Wayne State University*, (E.D. Mich. Mar. 20, 1996) (holding that Wayne State University is a state instrumentality immunized from liability for damages under the Eleventh Amendment), *aff'd*, 110 F.3d 65, *cert. denied*, 522 U.S. 860 (1997); *Coleman v. Wayne State University*, 664 F.Supp. 1082, 1084 (E.D. Mich. 1987) ("Wayne State University is a state instrumentality, and therefore qualifies for state immunity under the Eleventh Amendment. The University's origins are in the Michigan State Constitution, and its Board of Governors is a constitutional body. There is no reason to distinguish Wayne State University from other Michigan universities whose constitutional status, other courts have held, confers Eleventh Amendment immunity.") (citing *Karmanos v. Baker*, 816 F.2d 258, 259 (6th Cir. 1987) (6th Cir.)).

This is true even where the defendants are alleged to have committed constitutional violations and the plaintiff has brought claims

pursuant to § 1983. *See Simmons v. Napier*, 2013 WL 12177160, at *3-4 (E.D. Mich. June 28, 2013) (dismissing claims against Wayne State police department defendants in their official capacities); *Dugan v. Brooks*, 818 F.2d 513, 515 n.3 (6th Cir. 1987) (finding that state university police officers were entitled to sovereign immunity when sued in their official capacities for money damages). And where the university's state authority includes employing police officers, see M.C.L. § 390.1511, the Court concludes that Defendants Eisel and Glowacz are entitled to sovereign immunity in their official capacities.

## B. Qualified Immunity

But Plaintiff's § 1983 claim is also being brought against Defendants in their individual capacities for using excessive force in violation of the Fourth Amendment. As to that claim, Defendants argue they are entitled to qualified immunity. ECF No. 5, PageID.28-31.

To establish an excessive force claim based on handcuffing, the plaintiff must show that: (1) the plaintiff complained about the tightness of the handcuffs, (2) the officers ignored the plaintiff's complaint, and (3) the handcuffs caused a physical injury. *McGrew v. Duncan*, 937 F.3d 664, 668 (6th Cir. 2019). Moreover, "[n]ot all allegations of tight handcuffing . . . amount to excessive force." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). "And, even when a plaintiff makes this showing, a defendant officer may still be entitled to summary judgment on the basis of qualified immunity if it would not be clear to a reasonable officer that

9

he was violating the plaintiff's rights." *O'Malley v. City of Flint*, 652 F.3d 662, 671 (6th Cir. 2011).

To determine whether the officers are entitled to qualified immunity, the Court examines: (1) whether a constitutional right has been violated; and (2) whether that right was clearly established, though they may be analyzed in any order. *Jackson v. Lubelan*, 657 Fed.Appx. 497, 500 (6th Cir. 2016); *see also* Pearson *v. Callahan*, 555 U.S. 223, 236 (2001).

First, Defendants contest that it was clearly established in 2015 that Eisel and Glowacz's conduct violated the Fourth Amendment. ECF No. 5, PageID.29. But the case on which Defendants rely for that proposition, *Fettes v. Hendershot*, 375 Fed.Appx. 528, 535-36 (6th Cir. 2010), has been called into doubt by subsequent published Sixth Circuit opinions. *See Baynes v. Cleland*, 799 F.3d 600, 616-17 (6th Cir. 2015) (finding *Fettes* to be unpersuasive and not binding precedent in excessively tight handcuffing qualified immunity case). "The law is clear in this Circuit regarding the prohibition against excessively forceful handcuffing." *Id.*; *see also Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (the right to be free from "excessively forceful handcuffing" is clearly established for qualified immunity purposes). Accordingly, it was clearly established in 2015 that Plaintiff had a right to be free from excessively forceful handcuffing.

However, under a qualified immunity analysis the Court must also consider whether Rodgers has set forth sufficient evidence to create a genuine issue of material fact that a constitutional violation occurred (i.e., that Defendants engaged in excessively forceful handcuffing). For purposes of this motion Defendants only contest the third element of Plaintiff's prima facie case: that Plaintiff has failed to demonstrate that he suffered any physical injury resulting from the handcuffing or created a genuine issue of material fact as to that element. (ECF No. 11, PageID.181.)

### i. Plaintiff is not entitled to additional discovery

In support of his argument that Plaintiff has met his burden, Plaintiff disputes that this motion should be treated as a motion for summary judgment because he has not had the opportunity to conduct discovery to prove his claim. ECF No. 10, PageID.122. Plaintiff contends that he "wishes the opportunity to get records from the police department regarding the length of detainment and cuffing as well as depositions of the two Defendant officers." *Id.* But under Federal Rule of Civil Procedure 56, a defendant may file a motion for summary judgment at any time prior to 30 days after the close of discovery, including pre-discovery. This is also a common feature in § 1983 claims where defendants raise qualified immunity because the assertion of such a defense generally puts a halt to all discovery, as qualified immunity is a defense to suit, not just liability. *See Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982). At the same time, the Supreme Court has stated that "*limited discovery may sometimes* be necessary before the district court can resolve a motion for summary judgment based on qualified immunity." *Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) (emphasis added).

And Rule 56(d) provides that safeguard for plaintiffs in this predicament. Pursuant to Rule 56(d)[2] and relevant Sixth Circuit caselaw, if a plaintiff feels that additional discovery is necessary to respond to a motion for summary judgment, the plaintiff may not simply state she needs discovery in her response to the defendant's motion. Rather, she must file a separate motion and affidavit pursuant to Rule 56(d) explaining the need for discovery and *why* that discovery will be necessary to defeat qualified immunity. *See Short v. Oaks Corr. Facility*, 129 Fed.Appx. 278 (6th Cir. 2005) (discussing this issue in the context of a § 1983 case where defendants allege qualified immunity). Plaintiff's response to Defendant's motion openly discusses Rule 56(d) and cites cases explaining the requirement that a request for additional discovery must be made in a separate motion with an attached affidavit from the Plaintiff. *See* ECF No. 10, PageID.121-22 (citing *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (6th Cir. 1975); *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)).

---

[2] This rule used to be located at FRCP 56(f). When stylistic changes were made to the FRCP in 2010, this rule was moved from subsection (f) to subsection (d). Therefore, some of the cited cases refer to an FRCP 56(f) motion, rather than an FRCP 56(d) motion.

Nevertheless, Plaintiff has failed to file such a motion and accompanying affidavit in order to support his request. Nor has Plaintiff even attempted to explain how or why the discovery he requests (deposing the two officers and getting records from the police department) will show that he sustained a physical injury in order to overcome qualified immunity.

Instead, Plaintiff requests that Defendant's motion be denied because discovery has not begun and argues he has pled sufficient facts to form a basis for his complaint alleging a Fourth Amendment violation. ECF No. 10, PageID.122. But the Court cannot deny summary judgment simply because no discovery has been taken. The Sixth Circuit has already held this is not permissible in qualified immunity cases. *Skousen v. Brighton High School*, 305 F.3d 520 (6th Cir. 2002) (finding district court erred in dismissing motion for summary judgment based on qualified immunity solely because discovery was not complete); *Short*, 129 Fed.Appx. at 283 (finding district court did not abuse its discretion in ruling on summary judgment motion prior to *any* discovery because the plaintiff-appellant failed to comply with either the technical or substantive aspects of Rule 56(d)); *Steele v. City of Cleveland*, 375 Fed.Appx. 536, 540-41 (6th Cir. 2010) (quoting *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) ("In the absence of a sufficient [Rule 56(d)] affidavit, there is no justification for the district court's determination that a motion for summary judgment would be premature. . . .")).

Because Plaintiff has not followed the procedure spelled out in Rule 56(d) and the applicable Sixth Circuit caselaw, Plaintiff is not entitled to additional discovery and must rely on the record as the parties have provided it in their exhibits.

### ii. Plaintiff has failed to show the violation of a constitutional right

As explained above, the only element of the prima facie case of excessive handcuffing Defendants contest for purposes of this motion is whether Plaintiff can prove he sustained a physical injury from the handcuffing. ECF No. 11, PageID.181.

Here, the sole evidence proffered as to Plaintiff's injuries is allegations in Plaintiff's complaint[3] and two sets of medical records; one showing that Plaintiff went to an emergency center approximately two weeks after the incident on June 5, 2016; the other showing that Plaintiff visited a sports medicine clinic approximately nine months after the incident on February 20, 2017. ECF Nos. 10-5, 10-6 (Plaintiff's Exhibits D and E).

The June 2016 medical records indicate that Plaintiff was diagnosed with "bilateral wrist pain" and a "swollen joint" after reporting to an emergency center but makes no mention of handcuffing. ECF No. 10-5. It also shows that Plaintiff waited a little over two weeks to visit an

---

[3] Plaintiff's complaint alleges that he sustained "cut[s]" to his wrists when the handcuffs were applied tightly, resulting in "severe and permanent injuries" including "possible aggravation of pre-existing conditions or re-aggravation of dormant conditions." ECF No. 1 PageID.4.

14

emergency center following the incident. While this is evidence of a subsequent condition, no contemporaneous evidence of a physical injury exists. *Id.* The February 2017 medical records appear to be a follow-up visit to a sports medicine clinic resulting from the June 2016 treatment in the emergency room. ECF No. 10-6. The records indicate that Plaintiff was given some injections in his wrists to alleviate pain—of which Plaintiff gave a pain score of 9 out of 10. *Id.* The records also show that Plaintiff was suffering from degenerative arthritis in both wrists, but again makes no mention of handcuffing. *Id.* In sum, neither report makes any mention of handcuffing or attributes pain, swelling, or abrasions to allegations of tight handcuffing as a result of the May 20, 2016 arrest.

The record is also devoid of any photographs of the alleged injuries or any sworn testimony (in the form of a deposition, affidavit, or declaration) from Plaintiff indicating that he suffered pain, or noticed any bruising, marks, or other cuts to the skin following the handcuffing. The record contains no testimony from Plaintiff connecting the May 2016 handcuffing to the June 2016 and February 2017 medical visits. Nor is there any testimony linking Plaintiff's handcuffing to any potential aggravation of his degenerative arthritis. *Getz v. Swoap*, 833 F.3d 646, 653-54 (6th Cir. 2016) (affirming a grant of summary judgment in a tight handcuffing case because there was no evidence of a causal connection between the tight handcuffs and the diagnosis of carpal tunnel syndrome that was the plaintiff's only allegation of physical injury apart from pain

and numbness felt after the first minute). Indeed, the record does not contain any evidence of a physical injury—or even facts allowing a jury to infer the existence of a physical injury—that was caused by excessive handcuffing by Defendants. *See Morrison v. Board of Trustees of Green Township*, 583 F.3d 394, 402 (6th Cir. 2009) (where witness testified that the handcuffs were so tight that the plaintiff's skin was pinched and turning black and blue and there was deposition testimony from the plaintiff that she explained to an inquiring paramedic that the marks on her wrists were from the handcuffs); *Jackson*, 657 Fed.Appx. at 501 ("[A] subjective feeling of pain or numbness standing alone does not constitute a physical injury."). Nor did Plaintiff rebut Defendants' affidavit asserting that Plaintiff would not have been admitted to the Detroit Detention Center without a medical clearance if he had any visible injuries. *See* ECF No. 5-2, PageID.39-40.

At bottom, evidence of "bilateral wrist pain" and a "swollen joint" two weeks after the incident, with no additional evidence linking this pain to the handcuffing incident, is insufficient to create a genuine issue of material fact that a handcuffing injury occurred. *Jackson*, 657 Fed.Appx. at 502 (stating that in *Baynes*, the court "relied on medical records indicating that he was treated for wrist injuries and diagnosed with 'bilateral radial sensory neuropathy *from handcuffs*'") (quoting *Baynes*, 799 F.3d at 609).

In the absence of any evidence in the record that shows, or could tend to show, an injury "resulting" from the handcuffing, Plaintiff has not created a genuine issue of fact that Defendant Eisel and Defendant Glowacz violated the Fourth Amendment. *Jackson*, 657 Fed.Appx. at 500 (quoting *Baynes*, 799 F.3d at 608). They are accordingly entitled to qualified immunity and their motion for summary judgment must be granted.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss and for Summary Judgment in Lieu of an Answer (ECF No. 5) is **GRANTED**.

**IT IS SO ORDERED**.

DATED: March 23, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, March 23, 2020, by electronic and/or ordinary mail.

S/A. Chubb  
Case Manager and Deputy Clerk